The next case today is United States v. Rashad McKinney, Appeal No. 201265. Attorney Mattson, please introduce yourself for the record and proceed with your argument. I'm Harris Mattson. I represent the defendant appellant Rashad McKinney. Good morning. If I may reserve three minutes for rebuttal, Your Honor. Yes. And may it please the court. There are now two issues before the court. The first is a question of law regarding the essential attributes of a manager or supervisor within the meaning of Section 3B1.1b of the sentencing guidelines. And the second issue is also a legal question about whether the evidence at the sentencing hearing in this case was sufficient to support the district court's conclusion that Mr. McKinney was a manager or supervisor within the meaning of Section 3B1.1b. With regard to the first issue, my position is that the exercise of authority or control over another participant in the criminal scheme on at least one occasion is an essential attribute of a manager or supervisor under the guideline. Why is that an issue? I mean, the district court made explicit findings that your client, this defendant, recruited and directed individuals. Let's take the straw purchases of the firearms. That's the clearest example in my mind. Recruited individual A said to individual A, I want you to go to this store. I want you to purchase this firearm, this type of firearm, and I will compensate you for doing it. And that act happened over and over again with a number of individuals. On what basis isn't that controlled? Well, Your Honor, I think to answer the initial question, the reason that I'm addressing this issue is that the government appears to take the position that the exercise of authority or control is not an essential attribute of a manager or supervisor. I don't read the government's brief that way. The government says that there doesn't have to be any hierarchical structure. That you don't have to have absolute authority to command someone to do something. But that's true. No one in any organization has absolute authority to command. You know, you may have an associate in your law firm and you can order him to go attend a certain hearing. But that authority isn't absolute. He can refuse to do it, and if he refuses to do it, you can fire him. But there's no absolute authority to command and there's no such requirement in the guidelines. Your Honor, the distinction that I drew at the sentencing hearing and also in my briefs is between an economic transaction that involves a request for particular services and an offer to pay for or compensate those services in some way on the one hand versus, on the other hand, a command issued to a subordinate individual whose role is defined within a hierarchy. And I believe that the latter is what's required under the guidelines. But that's a purely linguistic distinction, all right? And to the extent the distinction exists at all, and I doubt that it does, it would seem to me it's for the district court to find which side of the line it files on. You know, if Mr. X, who is the local leader of La Casa Nostra, goes to the usual mafia hangout in his community and says, I need three guys to carry out a bank robbery, and three people come forward and he says, fine, you're in, I'll give you each 15% of the loot, and they go out and perform the robbery, there's no question that he is their manager or supervisor for purposes of that endeavor. And I don't see the difference between that and going out and recruiting a bunch of store purchases for firearms and paying them in drugs instead of cash. Your Honor, another aspect of my argument at sentencing and in my briefs was that the district court concluded that Mr. McKinney exercised authority and control over others on the basis of his offers to pay for transportation, and yet the exact same conduct carried out by other members of the conspiracy was not found to be the exercise of authority and control, and those individuals did not receive the enhancement. But if you set aside, first of all, I'm not sure that those situations are or are not comparable, but set that aside, isn't this enhancement sustainable simply on the basis of the store purchases of firearms? All you have to do is manage or supervise one person, and there are several of these store firearms purchases, so you don't have to get to the so-called chauffeur. To manage or supervise, I believe, means to exercise a form of authority or control over a person that is a function of an established role. That's why we're talking about a role enhancement. A person can't have a superior role. There's nothing in the guidelines that says there has to be an established hierarchy. I mean, by definition, we're talking mostly about criminal organizations in which lots of things are done ad hoc, and that doesn't exonerate people from role enhancements just because there's no organization chart in a drug ring or a criminal enterprise. Your Honor, this court's precedent in Tejada Beltran from, I believe, 1995. Yeah, which is a case that I wrote, and I think I understand. Yes, Your Honor. In that case, you discussed the qualities of a leader within the meaning of Section 3B111A and talked about the fact that that role implies dominance, power in a hierarchy, and the authority to ensure other persons will heed commands, as opposed to an organizer whose essential attributes are bringing together a diverse group of individuals to form some kind of whole or a unit. So I believe these role enhancements and the way that the roles are defined in the guidelines does necessarily imply some kind of hierarchy or some kind of understanding of what the individuals are in relation to each other. And so I do think, and the district court agreed with my position, that merely entering into a voluntary economic transaction, even if it's illegal, does not necessarily involve the exercise of authority or control by one person or another. That's true. And yet proceeded to find solely on that basis that Mr. McKinney was, in fact, a manager or supervisor. All of the facts that the district court relied upon to conclude that my client was a manager or supervisor were voluntary economic transactions. There was no additional evidence that my client's conduct was a product of his superior role in relation to the other participants. I thought there was evidence of his actually putting a gun to one of them. That's true, Your Honor. That conduct, though, was not in any way related to Mr. McKinney's attempt to enforce a command for that person to buy a firearm, for example, or to do any other thing in relation to carrying out the scheme. Go ahead. I was just going to ask, so there was no evidence that the money that she owed him had anything to do with this conspiracy? No, Your Honor. As far as I know, the grand jury testimony was not very extensive and not very detailed in that respect. Let me add another factor. The case law from this court states that the authority possessed by a defendant to whom the enhancement is applied may be fairly minimal. Isn't this what we have here? Your characterization, even if it's minimal, it would still... I will cite an April 7th opinion from this court, U.S. v. Garcia Sierra. What do you have to say about that? I'm sorry, Your Honor, repeat the question. Your voice is not very loud to me. The case law from this court states that the authority possessed by the person to whom the enhancement is applied may be fairly minimal. And even if you minimize, in my view, whatever actions McKinney may have taken in regards to the other individuals, wouldn't under that standard that be sufficient? And again, the case law is as recent as April 7th, U.S. v. Garcia Sierra, written by Chief Judge Powell. Yes, Your Honor, the authority may be minimal, but I think that the authority still must be a function of particular roles that are part of the organization, part of the hierarchy that comprises the criminal scheme or the conspiracy in general. And so there is a distinction between having a defined role within a conspiracy, on the one hand, and on the other, a criminal actor who may be involved in a criminal scheme engaging in some kind of transaction on an ad hoc basis with a person that he happens to encounter. And the latter should not qualify for the role enhancement. The district court conflated these two categories of behavior by using words like direct and tell. But any time a person offers to pay another person for some particular action to be performed, the person offering the compensation has to direct the person in some sense. They have to tell the person what it is they want them to do. That alone should not be the basis for the role enhancement. Thank you, Counsel. You've reserved some time. Ms. Semivan. Thank you, Your Honor. Now, based on the arguments that McKinney has raised here, what they essentially boil down to is an attempt to obfuscate the guideline standards and the consistent authority from this court in interpreting them since Tejada Beltran in the mid-90s. The guideline paradigm is actually quite simple, and it operates on two axes. One, the level of responsibility, which you can see delineated in subsections A, B, and C. And two, the type of authority, which is illustrated through the disjunctives of either a leader or organizer in subsection A or a manager or supervisor in subsection B. Now, in this particular case, it's undisputed that at least five people were involved in it. And the number of people is relevant because this has to be authority over people, whether it's direct supervision or organizational authority. Now, I think Tejada Beltran is fairly clear in explaining the disjunctive between the two terms. But given that we're focusing on manager-supervisor, I think it's also instructive to look at the content of Fuller, which deals with subsection C, which is not really restricted to either the terms of A or B, but is a lesser level. Now, in Fuller, this court determined that the enhancement didn't apply because there weren't people that are a part of it. But that's not really what's at issue here. And in Fuller, it makes clear that there's a parallel between manager and organizer and leader and supervisor. Now, the district court in Fuller referred to the defendant as either a manager or organizer, making the parallel between those two terms clear. And it didn't really matter which was applying because it dealt with subsection C rather than A or B. Now, this court, by turn, explained the distinction between either control or organizational authority. And that illustrates that McKinney, in his reply brief, his attempt to focus purely on authority is really misplaced. And what his argument does, in effect, is collapse the distinction between manager and supervisor. And tellingly, he doesn't propose what the distinction would be based on this definition, whereas it would not make sense for the guideline to use two separate terms in subsection B if they meant the same thing, whereas it used two separate terms in subsection A that plainly mean different things. But we can set aside the specific terms of whether this was a supervisor or manager because the district court consistently used the disjunctive mentioning both throughout its sentencing hearing. And we can look to the actual conduct that McKinney engaged in. And that conduct is squarely within the ambit of previous decisions by this court and other circuit courts. Now, you can look to this court's decision in McCormick, where there was a scheme to rob a pharmacy, where someone retaining a driver as a participant in that scheme was enough to warrant the enhancement. And that's similar here, where McKinney retained drivers to drive him around and deliver drugs. You can also see in Turner and Caldwell, false statements either in Turner on behalf of an insurance scheme or in Caldwell for the express purpose of straw purchases of firearms, which again is a parallel directly here, are enough to warrant the enhancement. And you can also see through the Pierce case, again cited in the government's brief, that serving as a link between two locations, as Mr. McKinney did between Maine and Rochester, New York, is also enough to warrant the enhancement. So multidimensionally, McKinney's conduct is enough to fall within the realm of the guidelines, regardless of whether you call him a supervisor or a manager. Now, the defendant, McKinney, has also raised an argument that economic transactions in and of themselves are not sufficient to warrant one being a part of the conspiracy, warrant the enhancement, simply because they're paid in drugs versus conventional currency. But that's not what we're dealing with here. If you hired an Uber driver to take you to a place, you didn't mention why, and you happen to pay him in drugs as opposed to conventional currency, then the government agrees that that would not be enough to warrant an enhancement for being a supervisor or manager within the guideline scheme. But that's not what we're dealing with here. This is a scenario where one of the SIs, SI2, would drive Mr. McKinney almost daily for a period of three months, 10 to 50 stops per day, and described himself as a chauffeur. That's an enduring relationship. He knew what he was doing. He was plainly either a part of the conspiracy or, at a bare minimum, aiding and abetting it. And, of course, Guideline Comment 1 to this section clarifies that you don't need to be charged in order for the enhancement to apply, for the directed member to be charged, rather. And, again, I agree with Judge Selye. Probably the clearest illustration here is the straw purchases of firearms. Now, certainly, if you were to hire an Uber and then ask the driver to go into a gun store and buy multiple firearms for you and make false statements to do that, and then pay him in drugs or whatever you paid him in, that is something fundamentally different. The focus on the argument that it doesn't matter whether you're paying in drugs or currently misses the point entirely. The task performed here is something that is much more involved, something that is much more directly linked to facilitating the conspiracy. And here, whether you call him a supervisor or a manager, McKinney was plainly facilitating the conspiracy by working with other people. And whether the authority he exercised was organizational, as in just bringing disparate parts together, or whether it was directly supervisory, as in specifically instructing people to go in and buy firearms, it's ultimately immaterial. And the district court's findings make clear it applies. Was there not evidence from several sources that he exercised coercive authority over some of these folks by threatening them? Your Honor, yes, there was evidence that there was coercive authority involved. It's not essential to the finding. But there is evidence, as you observed, threatening someone with a gun. Maybe that was in direct reference to something that a task that was involved to facilitate the conspiracy. Maybe it wasn't. But it does illustrate the nature of the relationship between McKinney and this person, that this person was in fear of him because he made threats to her in one circumstance. Even if that threat wasn't in specific relation to driving or stock purchasing, it still shows the nature of the relationship. And it's also worth noting that many of these people were also addicted to drugs. Even if they made offers to assist, that shows a sort of dependent element, where they would either be reliant on or possibly in fear of McKinney to continue providing their supply of drugs. So, in a sense, that too is coercive authority. Yeah, but coercive authority, you're not suggesting, as the defendant does, that coercive authority is necessary. Not at all, Your Honor. I don't understand what the debate is all about. The question is, did he exercise authority or control, whether or not it's coercive? Agreed. That is the salient point. I was merely attempting to respond to the notion that even if coercive authority were required, as at the very least McKinney's opening brief seems to suggest, then the conduct and the factual pattern here would still support the enhancement, even if that were true. But, Your Honor, I agree. Coercive authority is not required. It's not an element of the guideline. And McKinney's conduct through straw purchases, through procuring rides, is squarely within the ambit of other decisions, both by this court and other circuit courts, applying this enhancement. So it's really quite simple. Let me ask you one particular question. Let's assume that the enhancement, Judge Woodcock, we find that the enhancement should not apply. I note that even if that were the case, and the guidelines were to be lower, I believe it would be 84 to 105 months. Judge Woodcock still varied from the guideline sentence, and his sentence was 77 months. So even if the enhancement didn't apply, wouldn't the sentence still stand? Because it's still lower than the applicable guideline range, should the enhancement not apply. Your Honor, my understanding of this court's precedent, and certainly you can correct me if I'm mistaken in this, is that even if it's below the guideline, there would still be a potential issue if the court had not expressly stated that the sentence would have been imposed, regardless of what the guideline range was. To my recollection, Judge Woodcock did not make that statement. So that's why the government did not argue harmless error here. But certainly it's worth taking into account that the sentence wound up being below the guideline range in any event. So certainly it does have at least the basic contours of a harmless error incident. Thank you. Thank you, Counsel. Thank you, Your Honors. If you would mute your devices. Mr. Mattson, you have three minutes. Thank you, Your Honor. I would just like to address the government's characterization of Mr. McKinney in its brief. The government states that he was a manager because he drew upon disparate persons to facilitate a conspiracy. That formulation is clearly a mirror of language from Tejada Beltran. In that case, it's a discussion of the attributes of an organizer. The government also cites Rodriguez-Alvarado for the proposition that a person can be a manager or supervisor merely on the basis of planning and organizing an offense because that type of conduct might involve greater relative responsibility. So I think that case, Rodriguez-Alvarado, is a product of Fuller. And again, Fuller was a discussion of all four role types within the context of 3D1.1c and the types of attributes that are associated with all four role types. So Fuller said that a person can be an organizer, leader, manager, or supervisor if the person exercises some degree of control over others or is responsible for organizing others. And then the court in Rodriguez-Alvarado took that language, which is quite broad and not very precise, to support a holding that a person can be a manager or supervisor merely on the basis of planning or organizing an offense. But I don't think that's correct because Tejada Beltran makes clear that there are particular attributes that are associated with each of these roles. A leader is not the same as an organizer. The same conduct isn't sufficient to warrant the designation of leader as opposed to organizer. And the same would be true of managers and supervisors. Ultimately, relative responsibility is not the sole determinant of when a role announcement can apply. The commission used certain words in describing these roles, and these words have particular meanings, as this court made clear in Tejada Beltran. The meaning of the word organizer is different from the meaning of the word leader. That's very true, Mr. Madsen, but factual situations don't come in neat little packages, and there are many cases in which a particular defendant can have the attributes of, say, either a manager or a supervisor, and a sentencing court could permissibly find the enhancement on either basis. It's not necessarily a clear-cut distinction, say, between manager and supervisor, because you may have attributes of both that are present, and this may be that kind of case. There may be attributes here of both supervision and organization, but as long as there are sufficient attributes of supervision to uphold the enhancement, the finding is supportable. Your Honor, I think that this court should undertake an analysis of the term manager, comparable to what the court did in Tejada Beltran in determining the meaning of the word organizer. But why do we have to here? Judge Woodcock was careful, I think, to use the disjunctive phrase manager or supervisor. So for purposes of this enhancement, it makes no difference whether we think your client is a manager or a supervisor. So why do we have to draw a distinction between the two, unless we find that the evidence doesn't support one of those characterizations here? Your Honor, I think as a legal matter, the meaning of the word manager necessarily involves the exercise of some degree of authority and control, just like the meaning of the word supervisor. That was the position I was taking in contrast to the government's position regarding what is required in order to qualify for this enhancement. And it would also seem that Rodriguez-Alvarado takes a contrary position to that. Rodriguez-Alvarado says that planning and organizing... I thought you just told us that Rodriguez-Alvarado was a C case. It was a B case, Your Honor. Okay. All right. Oh, no, that's the case where the panel said that you can have some aspects of organizational action, which can factor into the description of manager or supervisor. I remember that. Your Honor, and I think that to the extent that Rodriguez-Alvarado suggests that planning and organizing conduct by itself is sufficient for the manager or supervisor role status, that's incorrect. Thank you. Thank you, counsel. That concludes argument in this case. Attorney Mattson and Attorney Semivan, you should disconnect from the hearing at this time.